UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT F. MERCIER,
                          Plaintiff,

        v.                                    Case Number:  03 12611 MAP

CSX TRANSPORTATION, INC.,
                          Defendant.

## JOINT PRE-TRIAL CONFERENCE MEMORANDUM

The parties hereby submit to the Court, pursuant to the *Procedural Order Re: Final Pre-Trial Conference/Trial*, their *Joint Pre-Trial Conference Memorandum*, as follows:

**(1)      Concise Statement of the Evidence with Respect to Liability and Damages**:

**A.      Plaintiff:**

Testimony of plaintiff and a witness, Dave Vierschilling as to the happening of the accident and the condition of the subject conductor's chair before and after the accident.

Testimony of Stephen Wilson of CSX as to the preparation of the accident report.

Testimony of John Allen Rimer and K. J. Knudsen and J. T. Biernacki of CSX as to inspection of chair after accident. custodian of records for CSX as to maintenance records for subject chair for before and after the accident.

Photographs of the subject chair.

Testimony of the plaintiff as to his injuries, medical treatment, wage loss, and the effect of his injuries on his normal and daily activities.

Testimony of plaintiff's treating physician, Dr. James Striker as to plaintiff's injuries and treatment received.

**B.    Defendant:**

**1.    Liability:**

CSX locomotive CSX 5105 was shopped, repaired, and/or serviced on May 17, 2003, and May 20, 2003, at two separate yards by CSX and no defects were noted by either employee to the locomotive's conductor's chair. Locomotive CSX 5105 was thereafter released and became the lead locomotive for train Q11920 on which the plaintiff states that he was injured.

At Worcester, MA, immediately after the plaintiff alleges he was injured, the conductor's chair was inspected by CSX and it was noted that the stops on the chair had been intentionally knocked off. The plaintiff himself must have broken off the stops after he took possession of the locomotive with his crewmate. When CSX inspected the damaged chair, after the plaintiff was allegedly injured, plaintiff was instructed by CSX to sit in the brakeman's chair for the remainder of the run to Selkirk, NY. The brakeman's chair was thoroughly inspected before the plaintiff was ordered to use it and the chair was found to be with no defects. When the locomotive arrived at Selkirk, NY, the stops on the brakeman's chair were also then found to have been intentionally knocked off.

**2.    Damages:**

The plaintiff was initially diagnosed with a soft tissue injury to his lower back and was advised to return to work almost immediately, within a month's time, after his alleged injury. Due to the plaintiff's malingering he failed to return to work. He filed, almost immediately after he was allegedly injured, for leave in accordance with the *Family Medical Leave Act* and remained out of the employ of CSX for almost a year. The plaintiff also sought from and was

awarded disability benefits by the Railroad Retirement Board stating that he was disabled from work. CSX has discovered that the plaintiff, while he was telling CSX and the RRB that he was disabled from work, was working mostly full-time, as well as at times part-time, for his brother-in-law who has a siding business. The RRB has also learned that the plaintiff was working and then initiated an investigation and now has referred the matter to the United States Attorney for the North District of the District of New York seeking prosecution of the plaintiff.

**(2)**     **Statement of Agreed Facts:**

On or about May 20, 2003, plaintiff was working aboard the defendant's train Q11920 which was powered by lead locomotive CSX 5105 and traveling from Boston, MA to Selkirk, NY. The plaintiff, while onboard locomotive CSX 5105, was working as a conductor for the defendant.

**(3)**     **Statement of Contested Facts:**

**A.**     **Plaintiff**:

Defendant contests plaintiff's version of the accident, and contends that plaintiff "tampered" with the chair and intentionally caused it to collapse.

**B.**     **Defendant:**

1.     Whether the plaintiff damaged the conductor's chair prior to his alleged injury, and thereby solely causing the condition which allegedly led to his accident and alleged injuries?

2.     Whether the plaintiff was injured as a result of his alleged accident?

3.     The nature, extent, and duration, if any, of plaintiff's alleged disability?

**(4)    <u>Jurisdictional Issues</u>:**

None.


**(5)    <u>Issues Raised by Pending Motions</u>:**

**A.    Defendant:**

Though there are no pending motions before the court on the following issues, the

defendant will be seeking orders, at the Final Pre-Trial Conference, from the court as

follows:

   1.    for the Railroad Retirement Board to produce all of its records concerning

        the plaintiff's application for disability benefits, the records pertaining to

        the benefits it paid the plaintiff, and for a copy of its investigation file

        concerning the plaintiff's application and the benefits paid to him;

   2.    for the plaintiff to produce the name and all records of the chiropractor

        with whom he treated for lower back pain/injury prior to his May 2003

        back injury;

   3.    for the plaintiff to produce his federal and state tax returns for 2003 and

        2004; and

   4.    for a view of locomotive 5105 or facsimile thereof.

Also, the defendant never had notice of the alleged defect, therefore no liability can be

imposed and the defendant expects to file a motion for directed verdict at the close of the

plaintiff's case for judgment on this issue.

The only other remaining issues are those set forth by the parties in their *Motions in

Limine*.

**(6)**    **Issues of Law**:

    **A.**    **Plaintiff:**  Plaintiff contends that the defective chair in the locomotive is a violation of the Locomotive Boiler Inspection Act and thus negligence per se.

    **B.**    **Defendant:**

        **1.**    ***Locomotive Inspection Act* Liability:**

    The defendant expects to prove that at the time that CSX 5105 was turned over to the plaintiff and his engineer, the locomotive was in "proper condition and safe to operate without unnecessary danger of personal injury" and thus did not violate the provisions of the *Locomotive Inspection Act*, 49 U.S.C. § 20701, et. seq. ("LIA"), <u>Gregory v. Missouri Pacific R.R. Co.</u>, 32 F.2d 160 (5th Cir. 1994).[1]  Moreover, the defendant states that any such accident was due solely to the plaintiff's own negligence and/or intentional conduct.  Consequently, the defendant maintains that the plaintiff will be unable to meet his burden in proving each and every element of his LIA case.

    In order to recover under LIA, the plaintiff must prove that the railroad violated the LIA and that violation was a cause of the plaintiff's injury.  <u>Carter v. Atlantic & St. Andrews Bay Ry. Co.</u>, 338 U.S. 430 (1949).  But, proof that the plaintiff's own negligence was the sole cause of his injury is a valid defense for the defendant to the plaintiff's LIA violation claims, because it eliminates the possibility that a regulatory violation contributed in whole or in part to the plaintiff's injuries.  <u>Walden v. Illinois Central Gulf R.R.</u>, 975 F.2d 361 (7th Cir. 1992).  It would then follow that proof that the plaintiff's intentional conduct was the sole cause of his injury would also be a valid defense for the defendant to the plaintiff's LIA violation claims.

---

[1] The LIA was formerly known as the *Boiler Inspection Act*, and was codified at 45 U.S.C. § 23.

2.      *FELA* Liability:

The defendant expects to prove that it provided the plaintiff with a "reasonably safe workplace" and thus did not violate the provisions of the *Federal Employers' Liability Act*, 45 U.S.C. 51 et seq. ("FELA"). Moreover, the defendant states that any such accident was due solely to the plaintiff's own negligence and/or intentional conduct. Consequently, the defendant maintains that the plaintiff will be unable to meet his burden in proving each and every element of his FELA case.

In order to recover under FELA, the plaintiff must prove that the railroad was negligent. Tennant v. Peoria and Pekin Union Railway Co., 321 U.S. 29 (1944). A plaintiff's prima facie case under the FELA must include all the same elements as are found in a common law negligence action including the element of foreseeability. Davis v. Burlington Northern, Inc., 541 F.2d 182 (8th Cir. 1976) *cert denied,*429 U.S. 1002 (1976); Robert v. Consolidated Rail Corporation, 832 F.2d 3 (1st Cir. 1987). The plaintiff must prove each of these elements by a fair preponderance of the evidence. Id. at 6. A FELA defendant is not required to provide a perfect or absolutely safe workplace; rather its duty is to provide only a reasonably safe place to work. Id. "Although the burden on a FELA plaintiff is not onerous, neither is it nonexistent, the plaintiff must present probative facts from which the negligence and the causal relation could reasonably be inferred." Dessi v. Pennsylvania R.R., 251 F.2d 149, 151 (3rd Cir. 1958), cert. denied, 356 U.S. 967 (1958). A plaintiff must not only prove the employer's negligence, but that the negligence was the actual and proximate cause of plaintiff's injuries. See Chesapeake & Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916). Although FELA is construed broadly, it does not impose strict liability on employers. See Robert, 832 F.2d at 6. As stated by the Court in Conroy v. Conrail, 720 F.2d 221, 223 (1st Cir. 1983), "it is black letter law that a FELA plaintiff

is not entitled to absolute security; the act, unlike Workmen's Compensation Statutes, does not make an employer an insurer...[I]t does not require absolute elimination of all dangers, but only contemplates the elimination of those dangers which could be removed by reasonable care on the part of the employer."

In this regard, statements that the plaintiff's burden of proof under the FELA is "slight" have occasionally been misconstrued.  Specifically, the holding in Rogers v. Missouri Pacific R. Co., 352, U.S. 500,506 (1957) does not support the view that FELA liability may be characterized "as one of slight negligence, minimal negligence, and even infinitesimal negligence."  Such view has been soundly criticized in FELA decisions in recent years.  An especially thoughtful analysis of this particular issue is provided in Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331,335-339 (5th Cir. 1997) (reference to word "slightest" in Rogers decision modifies only the causation prong of statutory liability and does not modify the concept of "negligence"; thus, duty of care owed by FELA and Jones Act employers retains usual and familiar definition of ordinary prudence, and does not impose a higher standard of care on defendants).

### 3.    Payment of Medical Expenses:

The Plaintiff is not entitled to recover damages for medical expenses covered by the plaintiff's insurance policy, the premiums for which were paid by the railroad.  Rogers v. Chicago & Northwestern Transportation Co., 375 N.E.2d 952 (1978); Nelson v. Pennsylvania Central Railroad Co., 415 F.Supp 225(1976).  The plaintiff may not recover for medical expenses paid pursuant to the plaintiff's insurance policy covered by the railroad, but may introduce evidence concerning the amount of medical bills or expenses; defendant railroad may thereafter introduce evidence regarding the expenses that have been paid.  Brice v. National

Railroad Passenger Corporation, 664 F.Supp. 20(1987).  Some courts have held that a plaintiff

cannot recover medical expenses paid by the railroad's health insurance and, therefore, the

amounts of medical bills and expenses bare little, if any, relevance to the plaintiff's claim and

were properly excluded from evidence.  Varhol v. National Railroad Passenger Corp., 909 F.2d

1557 (7th. Cir. 1990).  45 U.S.C. § 55 provides that a railroad may set off in a FELA suit "any

sum it has contributed and paid to any insurance, relief benefit or indemnity that may have been

paid to the injured employee on account of the injury or death for which said action was

brought."

### 4.    Payment of Wage Continuation Benefits:

A railroad defendant is entitled to an offset for sums paid for medical treatment and for

salary continuation under a long term disability plan.  Anglim v. Missouri Pacific R.R. Co., 832

S.W.2d 298 (Mo.Banc 1992).

### 5.    Prejudgment Interest:

Prejudgment interest is not permitted in a FELA action for injuries.  Morgan v. Monessen

Southwestern Railway Co., 108 S.Ct. 1837 (1988).

### 6.    Proper Measure of Damages:

Net wage loss is the proper measure of damages.  Jones & Laughlin Steel Corp. v.

Pfeifer, 462 U.S. 523 (1983); Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490 (1980);

Cazad v. Chesapeake & Ohio Railway Co., 404 N.E.2d 320 (Ill.App. 1980).  Only after tax, or

"net" income, is the proper measure of damages.  Norfolk & Western Railway Co. v. Liepelt, 444

U.S. 490 (1980).

Not only must federal income tax be deducted from any future wage loss calculation, but

social security tax or railroad retirement tax must also be deducted, along with any state income

tax.  Pickel v. International Oilfield Divers, Inc., 791 F.2d 1237 (5th. Cir. 1986); Matador v.

Ingram Tank Ships, Inc., 732 F.2d 475 (5th Cir. 1985).

Plaintiff is required to deduct from his gross earnings not only taxes, but also the business

costs and expenses he will not incur as a result of his alleged injuries.  These costs and expenses

include union dues, transportation expenses, and special work clothing or safety equipment.

Jones & Laughlin Steel Corp. v. Pfeifer, 732 F.2d 475 (5th Cir. 1985).

> 7.    **Future Pain and Suffering:**

The FELA requires a reduction of future pain and suffering to present value.  St. Louis

S.W. Ry. Co. v. Dickerson, 470 U.S. 409 (1985).

**(7)    Requested Amendments to Pleadings:**

None.

**(8)    Additional Matters to Aid in Disposition of the Case:**

None.

**(9)    Probable Length of Trial:**

This case will be tried before a jury and should require 5 to 6 days of witness testimony.

**(10)    Witness Lists:**

> **A.    Plaintiff:**

> > 1.    Robert Mercier, 2001 St. Paul's Drive, Ballston Spa, NY 12020 – liability,
> > damages.

2.    Dave Vierschilling, c/o CSX, 1 Bell Crossing, Selkirk, NY – liability

3.    Stephen Wilson, John Allen Rimer, K. J. Knudsen, J. T. Biernacki, CSX

custodian of records – liability and records

4.    Dr. James Striker, 1367 Washington Avenue, Suite 200, Albany, NY –

damages.

**B.    Defendant:**

1.    Robert F. Mercier, 2001 St. Paul's Drive, Ballston Spa, NY 12020;

2.    David G. Viershilling, c/o CSX Transportation, Inc.

3.    James E. Striker, M.D., Capital Region Orthopedic Group, 1367

Washington Avenue, Albany, NY – plaintiff's condition, care and

treatment;

4.    Clifford J. Belden, M.D., Albany Medical Center Hospital, 43 Scotland

Avenue, Albany, NY – M.R.I. – Radiological Consultation;

5.    Peter H. Kelley, M.D., Access Health Systems, 776A Watercliet-Shaker

Road, Latham, NY – plaintiff's condition, care and treatment;

6.    Martha Laswell, PT, Physical Therapy Associates of Schenectady, P.C.,

1529 Route 9, Clifton Park, NY – care and treatment provided to the

plaintiff;

7.    Claude Scialdone, M.D., Century Imaging, 7 Century Hill Drive, Latham,

NY – M.R.I. – radiological consultation;

8.    James E. Bell, M.D., Adirondack Radiology Associates – X-ray

consultation;

9.    Gary Nardin, RPA-C, 20 Prospect Street, Ballston Spa, NY – condition,

care and treatment of the plaintiff;

10.    James E. Strader, M.D., 20 Prospect Street, Ballston Spa, NY – condition,

      care and treatment of the plaintiff;

11.    Stephen R. Foley, D.C., 290 Church Street, Saratoga Springs, NY –

      condition, care and treatment of the plaintiff;

12.    Barbara Dunbar, R.N., c/o CSX Transportation, Inc., 1 Bell Crossing,

13.    S.T. Cowles, U.T.U.;

14.    A. F. Barton, R.N., c/o CSX Transportation, Inc., 1 Bell Crossing,

      Selkirk, NY – plaintiff's condition, care and treatment;

15.    Daniel Puckett, c/o CSX Transportation, Inc., 1 Bell Crossing,

      Selkirk, NY – his investigation of the plaintiff's incident;

16.    John Rimer, c/o CSX Transportation, Inc., 1 Bell Crossing,

      Selkirk, NY – his inspection of locomotive 5105 and conversations with

      the plaintiff;

17.    William Keough, c/o CSX Transportation, Inc., 1 Bell Crossing,

      Selkirk, NY – his inspection of locomotive 5105 and conversations with

      the plaintiff;

18.    Kevin O'Toole, c/o CSX Transportation, Inc., 1 Bell Crossing,

      Selkirk, NY – his investigation of the plaintiff's incident;

19.    Kenneth . J. Knudson, c/o CSX Transportation, Inc., 1 Bell Crossing,

      Selkirk, NY – his cleaning and inspection of locomotive 5105;

20.    Marcus C. McCourt, c/o CSX Transportation, Inc., 1 Bell Crossing,

      Selkirk, NY – his investigation of the plaintiff's incident;

21.  Kenneth Davis, c/o CSX Transportation, Inc., 1 Bell Crossing,

Selkirk, NY – his examination and analysis of the conductor's chair from

locomotive 5105;

22.  Steven F. Wilson, c/o CSX Transportation, Inc., 1 Bell Crossing,

Selkirk, NY – his inspection of locomotive 5105 and conversations with

the plaintiff and Mr. Vierschilling;

23.  J. T. Beirnacki, c/o CSX Transportation, Inc., 1 Bell Crossing,

Selkirk, NY – his repair and inspection of locomotive 5105;

24.  Keeper of the records for:

a.  Albany Medical Center Hospital;

b.  Access Health System;

c.  Capital Region Orthopedic Group;

d.  St. Peter's Hospital;

e.  Albany Orthopedic Associates;

f.  Physical Therapy Associates of Schenectady, P.C.

g.  Century Imaging;

h.  Adirondack Radiology

i.  Foley Chiropractic, P.C.

j.  Stephen E. Strader, M.D.

25.  Tony Poutre of New York, plaintiff's work with C&N Construction while

out on disability with the defendant.

26.  Jim Miller of New York, plaintiff's work with C&N Construction while

out on disability with the defendant.

27.      John Hudson of New York, plaintiff's work with C&N Construction while out on disability with the defendant.

28.      Nathan Hale of New York, plaintiff's work with C&N Construction while out on disability with the defendant.

29.      James Beagle of New York, plaintiff's work with C&N Construction while out on disability with the defendant.

30.      *John Doe*, chiropractor who treated the plaintiff for his lower back pain/injury pre-May 2003.

31.      Thomas G. Cook, M.D., c/o CSX Transportation, Inc.,

32.      Thomas J. Neilson, M.D., c/o CSX Transportation, Inc.

33.      *John Doe*, c/o Railroad Retirement Board, plaintiff's claim file – benefits paid to the plaintiff, statements made by the plaintiff to the RRB.

34.      *John Doe*, c/o Railroad Retirement Board, the Railroad Retirement Board's Investigation file – plaintiff's inconsistent statements concerning his alleged disability.

35.      Scott Marshall, c/o CSX Transportation, Inc.

36.      Charles N. Nedeau, 71 Petrified Gardens Road, Saratoga Springs, NY – Mr. Nedeau is anticipated to testify as to the work and compensation paid to the plaintiff before, during, and after the date of the plaintiff's alleged injury.

37.      Gloria Nedeau, 71 Petrified Gardens Road, Saratoga Springs, NY – Mrs. Nedeau is anticipated to testify as to the work and compensation paid to the plaintiff before, during, and after the date of the alleged injury.

CSX hereby adopts and incorporates herein by reference the list of witnesses which the plaintiff identifies above and reserves the right to supplement its list of witnesses from time to time up and until trial.

**(11)**    **List of Trial Exhibits:**

    **A.**    **Plaintiff:**

        1.    Photographs of chair;

        2.    Incident report

        3.    Personal injury/occupational incident report

        4.    CSX Locomotive Work Report CSX 5105  5/15/03

        5.    CSX Locomotive Incident History CSX 5105 5/17/03

        6.    CSX Locomotive Work History CSX 5105 5/20/03

    **B.**    **Defendant:**

        1.    Photographs of the damaged conductor's seat as found on the locomotive, CSX 5105;

        2.    Schematic drawings, of the interior cab area which includes the conductor's seat, of the locomotive class of the type of locomotive to which CSX 5105 belongs;

        3.    CSX 5105's Locomotive Outshop Report, dated May 17, 2003;

        4.    CSX 5105's Locomotive Incident/Shopping/Storage/Lab History, printed June 15, 2003;

        5.    CSX 5105's Locomotive Incident History forms for May 15, 2003, May 17, 2003, May 20, 2003, May 20, 2003, and May 25, 2003;

        6.    CSX 5105's Locomotive Servicing History, printed July 18, 2003;

7.   CSX 5105's Locomotive Maintenance History report;

8.   CSX 5105's Locomotive Maintenance History tasks;

9.   CSX 5105's Locomotive Work Report, May 17, 2003;

10.  CSX Cab Seat Inspection, SMR X-2400-01, Rev. E, April 30, 1999;

11.  CSX System Bulletins/Notices, March 28, 2003;

12.  CSX Safety Rules and Company Policies and Programs for the

     Transportation Department;

13.  The CSXT Safe Way;

14.  CSXT Operating Rules;

15.  CSXT Safe Way and Safe Job Procedures – Transportation

     Department;

16.  CSX Airbrake and Train Handling Rules;

17.  NORAC Operating Rules, Eighth Edition, effective January 1, 2003;

18.  Exemplar Jaggers cab seat 1000244 model;

19.  Locomotive CSXT 5105 or reasonable facsimile thereof;

20.  NYS-45 Quarterly Combined Withholding, Wage Reporting and

     Unemployment Insurance Return for Charles N. Nedeau, d.b.a. C&N

     Construction, for 1st and 2nd Quarters for 2004;

21.  Form W-2 Wage and Tax Statement, 2003, from Charles N. Nedeau to

     Robert F. Mercier;

22.  Charles N. Nedeau, d.b.a. C&N Construction's Quarterly Work History

     and Earnings report for Robert F. Mercier, 2003;

23.  Medical record, July 17, 2002, Stephen E. Strader, M.D.;

24.     Medical record, July 1, 2003, James E. Striker, M.D.;

25.     Return to Work Evaluation Form, Access Health Systems, June 5, 2003;

26.     X-ray report, Century Imaging, Claude Scialdone, M.D., June 6, 2003;

27.     Employee Notification Form, June 16, 2003;

28.     Letter Conditionally Granting Leave, June 16, 2003;

29.     Medical record, September 2, 2003, James E. Striker, M.D.;

30.     MRI report, November 15, 2003, Clifford J. Belden, M.D.;

31.     Medical record, December 30, 2003, James E. Striker, M.D.;

32.     Medical record, February 13, 2004, James E. Striker, M.D.;

33.     Medical record, February 13, 2004, James E. Striker, M.D.;

34.     Medical record, March 20, 2004, James E. Striker, M.D.;

35.     Medical record, January 23, 1989, William C. Kite, Jr., M.D.;

36.     Medical record, May 21, 2003, Peter H. Kelly, M.D.;

37.     Voluntary Waiver of Hearing, April 28, 1988;

38.     Notice of Discipline, May 3, 1988;

39.     Voluntary Waiver of Investigation, October 31, 1990;

40.     Notice of Discipline, November 5, 1990;

41.     Voluntary Waiver of Investigation, July 26, 1991;

42.     Notice of Discipline, July 29, 1991;

43.     Voluntary Waiver of Investigation, July 26, 1991;

44.     Notice of Discipline, July 29, 1991;

45.     Voluntary Waiver of Investigation, October 21, 1991;

46.     Letter from R.A. Knight to Mr. Mercier, August 2, 1983;

47.     Notice of Discipline, May 6, 1997;

48.     Criminal records from the State of New York;

49.     Letter from Thomas J. Neilson, M.D. to Mr. Mercier, July 22, 2003;

50.     Medical records and reports from:

      a.     Albany Medical Center Hospital;

      b.     Access Health Systems;

      c.     Capital Region Orthopedic Group;

      d.     Physical Therapy Associates of Schenectady, P.C.;

      e.     Orthopedic Associates of Saratoga; and

      f.     Medical Center of Central Massachusetts.

51.     Railroad Retirement Board, plaintiff's claim file.

52.     Railroad Retirement Board, the Railroad Retirement Board's Investigation file.

The defendant reserves the right to supplement this response from time to time as discovery and its investigation proceeds, and reserves the right to use any and all exhibits identified by the plaintiff for its defense at the time of trial.

**(12)     Proposed Jury Instructions, Motions in Limine, and Special Verdict Form:**

    **A.     Plaintiff:**

      1.     *Plaintiff's Proposed Verdict Sheet* is attached hereto as Exhibit "A1."

      2.     *Plaintiff's Requested Points for Charge* is attached hereto as Exhibit "A2."

    **B.     Defendant:**

      1.     *Defendant CSX Transportation, Inc.'s Request for Special Verdict Questions* is attached hereto as Exhibit "B1."

2.    *Defendant CSX Transportation, Inc.'s Proposed Jury Instructions* is

attached hereto as Exhibit "B2."

Respectfully submitted,

ROBERT F. MERCIER,                      CSX TRANSPORTATION, INC.
by his attorneys,                       by its attorneys,


 /s/  Rudolph V. De George, II            /s/   Richard A. Davidson, Jr.
Rudolph V. De George, II                Michael B. Flynn         BBO# 559023
Barish Law Offices, P.C.                Richard A. Davidson, Jr.   BBO# 552988
Three Parkway, Suite 1320               FLYNN & ASSOCIATES, PC
1601 Cherry Street                      400 Crown Colony Drive, Suite 200
Philadelphia, PA 19102                  Quincy, MA 02169
(215) 923-8900                          (617) 773-5500

Dated: May 27, 2005